## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TRUSTEES OF THE PLUMBERS AND
GASFITTERS LOCAL 5 RETIREMENT
SAVINGS FUND, *et al.*,

      Plaintiffs,

      v.

PHENIX PLUMBING, INC.,
RNR ENTERPRISE, INC. and
RICHARD N. ROSENTHAL,

      Defendants.

Civil Action No. TDC-15-2299

### MEMORANDUM OPINION

This case is before the Court on a Motion for Default Judgment against Defendants
Phenix Plumbing, Inc. ("Phenix") and RNR Enterprise, Inc. ("RNR"). Having reviewed the
Complaint, the Motion, and the supporting documents, the Court finds no hearing necessary. *See*
D. Md. Local R 105.6. For the following reasons, the Motion for Default Judgment is
GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The Complaint was filed by nine plaintiffs. Six of the plaintiffs consist of the trustees of
the following employee benefit plans, as that term is defined in the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (2012): the Plumbers and Gasfitters Local 5
Retirement Savings Fund ("Retirement Savings Fund"), the Plumbers and Pipefitters
Apprenticeship Fund ("Apprenticeship Fund"), the Plumbers and Pipefitters Vacation Fund
("Vacation Fund"), the Plumbers and Pipefitters Medical Fund ("Medical Fund"), the Plumbers

and Pipefitters National Pension Fund ("National Pension Fund"), and the International Training Fund,("International Training Fund"). *See* 29 U.S.C. § 1002(3) and (37). The remaining plaintiffs consist of the Communication and Productivity Fund, a labor-management cooperation committee as that term is defined in the Taft-Hartley Act, 29 U.S.C. § 186(c)(9), and the Labor-Management Cooperation Act, 29 U.S.C. § 175a (2012); the Industry Promotion Fund, a trust fund; and the Plumbers Local Union No. 5 ("Local Union No. 5"), an unincorporated labor organization, as that term is defined in the Labor-Management Relations Act, 29 U.S.C. § 152(5).

Defendants Phenix and RNR are companies engaged in an industry affecting commerce and are "employers" for purposes of ERISA and the Labor-Management Relations Act. *See* 29 U.S.C. §§ 1002(5), (9), (11), (12), and (14); and 29 U.S.C. §§ 142(1), (3) and 152(2). Phenix and RNR are corporate alter egos of one another and are therefore jointly and severally liable for any debts incurred by either corporate entity. Defendant Richard Rosenthal is a fiduciary of Phenix, as that relationship is defined in ERISA. *See* 29 U.S.C. § 1002(21)(A).

Phenix and RNR are required to make regular contributions to the eight plaintiff trust funds, and to collect and deposit dues into Local Union No. 5's account pursuant to a Collective Bargaining Agreement ("CBA") between the Mechanical Contractors Associations of Metropolitan Washington, D.C. and Local Union No. 5 on terms set out in a series of trust agreements between the parties. By the terms of these agreements, Phenix and RNR must make contributions to the trust funds on a monthly basis, at varying rates based on the particular fund, with the amount of the contributions based on the number of hours of covered work performed by employees. Phenix and RNR must also deduct union dues from employees' paychecks and deposit those dues into Local Union No. 5's account on a monthly basis, with the amount of the

deductions calculated based on the number of hours of covered work performed by the employees. The agreements also require Phenix and RNR to submit monthly reports detailing the hours worked by all covered employees, to ensure that the trusts and the Union can calculate the contributions and deductions owed. The agreements further provide that if Phenix and RNR fail to make timely payments to these funds, they are liable for (1) the unpaid contributions; (2) interest on delinquent payments, with the interest rate varying based on the fund at issue; (3) liquidated damages, calculated at varying rates based on the fund at issue; (4) and all reasonable costs and attorney's fees incurred in seeking to recover delinquent contributions.

Phenix and RNR submitted the required reports for the period from March 2015 to July 2015, but did not make the corresponding contributions. During that same period, Phenix and RNR took the required deductions from employees' paychecks for the Local Union No. 5 dues but failed to forward those dues to the Local Union No. 5 account. Accordingly, on August 6, 2015, Plaintiffs filed a Complaint in this Court alleging six causes of action: (1) an ERISA action against Phenix and RNR for the unpaid contributions to the Retirement Savings Fund, the Apprenticeship Fund, the Medical Fund, the Vacation Fund, the National Pension Fund, and the International Training Fund; (2) a request for a payroll audit against Phenix and RNR; (3) a claim for a "working assessment and other amounts due," which the Court construes as an action for breach of a collective bargaining agreement, pursuant to 29 U.S.C. § 185(a), against Phenix and RNR seeking the unpaid contributions to the Communication and Productivity Fund, the Industry Promotion Fund, and Local Union No. 5; (4) a request for a bond against Phenix and RNR; (5) a request for injunctive relief against Phenix and RNR; and (6) a claim for breach of fiduciary duty against Rosenthal. As to damages, as relevant here, Plaintiffs sought for Counts 1 and 3 the unpaid contributions, interest on those unpaid contributions at the rates specified in the

3

relevant agreements, liquidated damages on those contributions at the rates specified in the relevant agreements, and all reasonable costs and attorney's fees associated with this litigation.

On August 19, 2015, Phenix and RNR were served with the Complaint, but, to date, have failed to file a responsive pleading. On October 2, 2015, Plaintiffs filed a Motion for Clerk's Entry of Default as to both Phenix and RNR. The Clerk entered those defaults on October 21, 2015. On November 20, 2015, Plaintiffs filed a Motion for Default Judgment against Phenix and RNR seeking judgment in the amount of $85,069.17 on only Counts 1 and 3 of the Complaint. On November 24, 2015, Plaintiffs voluntarily dismissed Counts 2, 4, and 5 of the Complaint. On January 11, 2016, Plaintiffs voluntarily dismissed Count 6 of the Complaint, the only count alleged against Defendant Rosenthal. To date, Phenix and RNR have not responded to the entry of default or to the Motion for Default Judgment.

## DISCUSSION

### I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Pursuant to Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494-95 (D. Md. 2002). The Fourth Circuit has

4

a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421-22 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The court must determine whether the allegations support the relief sought. *See id.* To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."). Rule 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

## II.     Liability

Plaintiffs have dismissed the only claim against Rosenthal and directed their Motion for Default Judgment only to Phenix and RNR.  Rosenthal will therefore be dismissed as a defendant in this action.  Furthermore, because Plaintiffs have voluntarily dismissed Counts 2, 4, and 5 of the Complaint and directed the Motion for Default Judgment only to Counts 1 and 3 of the Complaint, the Court considers only those two counts.  Plaintiffs seek unpaid contributions to all of the funds and unpaid working assessments and dues to Local Union No. 5.

Phenix and RNR have failed to appear or otherwise defend.  The Court therefore accepts as true the well-pleaded factual allegations in the Complaint as to Counts 1 and 3.  *Ryan*, 253 F.3d at 780.  As a preliminary matter, Plaintiffs have alleged that Phenix and RNR are alter egos of one another.  Accepting that well-pleaded allegation as true, the Court treats Phenix and RNR as a single entity for purposes of establishing liability and assessing any ensuing damages. *Alkire v. Nat. Labor Rel. Bd.*, 716 F.2d 1014, 1018 (4th Cir. 1983) (stating that when entities are alter egos of one another, "the labor obligations of the original employer will be carried over to the subsequent entity, and both will be held liable for any violation of these duties by either employer").

### A.     Count 1: ERISA Claim

On Count 1, an ERISA action related to the Retirement Savings Fund, the Apprenticeship Fund, the Medical Fund, the Vacation Fund, the National Pension Fund, and the International Training Fund, ERISA requires that any employer obligated to make contributions to a qualifying benefit fund must "make such contributions in accordance with the terms and conditions" of the parties' agreements.  29 U.S.C. § 1145.  The allegations in the Complaint establish that Phenix and RNR were obligated by the terms of the CBA and the trust agreements

6

to make timely contributions to these Funds for hours worked by covered employees, and that Phenix and RNR failed to make those payments for the period from March 2015 to July 2015. The Complaint therefore establishes that Phenix and RNR are liable to the above-listed Funds for the unpaid contributions to those funds and for additional damages pursuant to the governing agreements.

To the extent that Plaintiffs seek default judgment on Count 1 in relation to unpaid contributions to the Communications and Productivity Fund, they have failed to plead adequate facts to establish liability. The Complaint did not allege that the Communications and Productivity Fund was an employee benefit plan within the meaning of ERISA, and it did not list this Fund in Count 1, which alleged an ERISA claim, instead including it in Count 3, which alleged a breach of the CBA. Because "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c), the Motion is denied as to Communications and Productivity Fund.

### B.    Count 3: Breach of Collective Bargaining Agreements

On Count 3, a claim by Local Union No. 5, the Communications and Productivity Fund, and the Industry Promotion Fund for breach of collective bargaining agreements under § 301 of the LMRA, 29 U.S.C. § 185(a), the Motion seeks default judgment on behalf of Local Union No. 5 only. The Complaint, taken as true, establishes that Phenix and RHR were obligated by the terms of the CBA to deduct from covered employees' wages their relevant union dues, computed based on hours worked, and to then pay those deductions into the Local Union No. 5 account on a monthly basis. The Complaint further establishes that Phenix and RHR made the deductions, but failed to then deposit those deductions into the Local Union No. 5 account, thereby depriving the Union of its due monies. This failure by Phenix and RNR is a breach of the CBA. Phenix

7

and RHR are therefore liable to the Local Union No. 5 for the unpaid contributions and for additional damages as set forth in the CBA.

## III.   Damages

### A.   Count 1: ERISA Claim

On Count 1, by the terms of the trust agreements between the parties, Phenix and RNR are liable for (1) unpaid contributions, (2) interest on delinquent contributions, with the interest rate varying based on the fund at issue, (3) liquidated damages, calculated at varying rates based on the fund at issue, and (4) reasonable costs and attorney's fees incurred in attempting to recover the unpaid contributions. As to the Retirement Savings Fund, the Apprenticeship Fund, the Medical Fund, and the Vacation Fund, the trust agreements specify an interest rate of 10 percent and provide that liquidated damages will be calculated at the rate of 20 percent. As to the National Pension Fund, the trust agreement specifies an interest rate of 18 percent, and provides that liquidated damages will be calculated at the rate of 10 percent of the unpaid contributions. As to the International Training Fund, the trust agreement specifies an interest rate of 12 percent and provides that liquidated damages will be calculated at the rate of 20 percent of the unpaid contributions.

These damages provisions either track ERISA itself or provide more favorable terms to Phenix and RNR than those allowed for under that statute. ERISA allows employers who fail timely to make contributions to be held liable for:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
> > (i) interest on the unpaid contributions; or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g).  Plaintiffs are therefore entitled to each of the categories of damages sought

in the Complaint for the unpaid contributions.

As for the specific amounts, Plaintiffs seek a total of $71,057.60 in damages for the

unpaid contributions, divided as follows:

Unpaid Contributions

| | |
|---|---|
| Local 5 Funds[1] | $36,912.61 |
| National Pension Fund | $20,799.71 |
| International Training Fund | $   341.20 |
| TOTAL | $58,053.52 |

Interest

| | |
|---|---|
| Local 5 Funds | $1,718.85 |
| National Pension Fund | $1,735.41 |
| International Training Fund | $   19.09 |
| TOTAL | $3,473.35 |

Liquidated Damages

| | |
|---|---|
| Local 5 Funds | $7,382.52 |
| National Pension Fund | $2,079.97 |
| International Training Fund | $   68.24 |
| TOTAL | $9,530.73 |

As evidence in support of these amounts, Plaintiffs provide the contribution reports

submitted by Phenix and RNR detailing the covered hours worked by employees for the period

from March 2015 to July 2015; a chart calculating the damages based on the hours listed in the

---

[1]   The Local 5 Funds, as used in the submitted reports, consist of the Retirement Savings Fund, the Apprenticeship Fund, the Medical Fund, the Vacation Fund, and Communications and Productivity Funds.

contribution reports and the relevant interest rates for the individual funds; and a declaration from James E. Killeen, a trustee of five of the Funds and the Business Manager/Financial Secretary Treasurer of Local Union No. 5, attesting to the accuracy of the allegations in the Complaint and the figures laid out in the damages chart.

These materials support the requested awards for the National Pension Fund and the International Training Fund in the total amount of $24,615.09 and $428.53, respectively. However, the figures for "Local 5 Funds" include unpaid contributions, interest, and liquidated damages attributable to the Communications and Productivity Fund, for which liability has not been established. *See supra* part II.A. Accordingly, the Court cannot readily determine, on this record, the damages awards to the Retirement Savings Fund, the Apprenticeship Fund, the Medical Fund, and the Vacation Fund. The Court will provide Plaintiffs with the opportunity to submit documentation of the appropriate damages awards as to these Funds.

**B.     Count 3:  Breach of Collective Bargaining Agreement Claim**

As to Count 3, by the terms of the CBA, Phenix and RNR are liable to Local Union 5 Funds for (1) unpaid contributions, (2) interest on delinquent contributions at a rate of 10 percent, (3) liquidated damages and a rate of 15 percent, and (4) reasonable costs and attorney's fees incurred in attempting to recover the unpaid contributions. Based on these provisions of the CBA, Plaintiffs seek a total of $6,729.82 in damages for the unpaid contributions to Local Union 5, broken down as follows:

| | |
|---|---|
| Unpaid Contributions | $5,624.97 |
| Interest | $  261.10 |
| Liquidated Damages | $  843.75 |

The evidence supporting the award of the unpaid contributions to the other Funds also supports the award of these unpaid contributions to the Local Union No. 5 account. The Court

will therefore enter judgment in favor of Plaintiffs for the requested $6,729.82 in unpaid contributions and damages to the Labor Union No. 5 account, as divided above.

### C.    Attorney's Fees and Costs

Plaintiffs seek attorney's fees in the amount of $6,621.75 and costs totaling $660.00.  In support of this request, Plaintiffs' attorney, R. Richard Hopp, provides receipts for the $400.00 filing fee and $260.00 spent for a private process server.  Hopp also attests that he spent 27.25 hours on this case, billed at a rate of $243.00 per hour.  Hopp further attests that he has been a member of the bar since 1990.  For an attorney with at least fifteen years of experience, this Court's Guidelines Regarding Hourly Rates provide for an hourly billing range of $275-425.  *See* D. Md. Local R. App. B ¶ 3 (2014).  The Court finds that the costs and attorney's fees requested in this case, which are billed at a rate below this Court's Guidelines, are reasonable.  The Court therefore awards Plaintiffs $7,281.75 in attorney's fees and costs, as delineated above.

## CONCLUSION

For the foregoing reasons, Richard N. Rosenthal is DISMISSED as a Defendant, and Plaintiffs' Motion for Default Judgment as to Phenix and RNR is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to all Plaintiffs except the Trustees of the Communication and Productivity Fund, as to which the Motion is DENIED. The prevailing Plaintiffs are awarded a total of $39,055.19, as specified in the separate Order accompanying this Memorandum Opinion. Plaintiffs are granted leave to file a submission containing additional evidence, within **21 days** of the date of the accompanying Order, to support the accurate calculation of a damages award for the Retirement Savings Fund, the Apprenticeship Fund, the Medical Fund, and the Vacation Fund. A separate Order shall issue.

Date:  June 21, 2016

THEODORE D. CHUANG
United States District Judge